UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TERRENCE LEE TAYLOR,

        Plaintiff,               Case No. 2:11-cv-512

v.                                            Honorable R. Allan Edgar

JEFF LARSON et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, Plaintiff sues AMF Warden Michael Curley and Deputy Warden Jeff Larson.

On August 16, 2011, Deputy Warden Larson told Plaintiff that the prison was collecting deoxyribonucleic acid (DNA) samples from prisoners. Plaintiff had to submit to a DNA sample or the sample would be taken by force. Plaintiff refused to give a DNA sample. Approximately fifteen minutes later, Plaintiff was taken to segregation in cuffs and shackles. "In violation of policy[,] I was not escorted by camera and there was no justification for the use of shackles. Shackles are only used against prisoners who have a violent prison record, which I do not." (Compl., docket #1, Page ID#3.)

Once in segregation, Plaintiff was stripped, searched and given a segregation jumpsuit. He was then placed in a cell "covered in fecal matter, (fresh fecal matter)." (Compl., docket #1, Page ID#3.) Plaintiff further complains that he was denied "all of [his] personal items[,] appliances, personal soap, toothbrush, toothpaste, books[,] mail, paper, pen/pen[cil], [and] legal documents." *Id.* He was also not allowed to write home or contact any family.

On August 18, 2011, Warden Curley came to Plaintiff's segregation cell and threatened Plaintiff that if he did not submit to a DNA sample, he would be pepper-sprayed and the DNA sample would be taken by force. Plaintiff finally agreed to submit to a DNA sample. Although Plaintiff gave the DNA sample on August 18, he was not released from segregation until the following day.

In summary, Plaintiff alleges that he was held in segregation under inhumane conditions in violation of his Eighth Amendment rights. Plaintiff also complains that he did not receive a major or minor misconduct ticket, notice of intent, a hearing or opportunity to defend his actions, in violation of his due process rights.

For relief, Plaintiff requests punitive and compensatory damages.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2));

*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff claims that the conditions and restrictions imposed upon him in segregation violated his Eighth Amendment rights.[1] He argues that MDOC staff placed him in a cell "covered in fecal matter, (fresh fecal matter)" and denied him of all of his personal items, appliances, personal soap, toothbrush, toothpaste, books, mail, paper, pens, pencils and legal documents. (Compl., docket #1, Page ID#3.) Plaintiff was in segregation for four days, from August 16 through 19, 2011.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

---

[1] In the MDOC, security classifications, from the least to most secure, are: Community Status, Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ H (effective Mar. 1, 2004). There are various types of segregation, including administrative segregation and detention. Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious escape risk. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ J (effective Feb. 14, 2004). Detention, or "punitive segregation," can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*, ¶ W.

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

First, Plaintiff complains of being placed in segregation for four days. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Accordingly, Plaintiff fails to state an Eighth Amendment claim for his placement in segregation.

Plaintiff also claims that he was denied personal items, appliances, soap, toothpaste, a toothbrush, books, mail, paper, pens, pencils and legal documents while in segregation for four days. Plaintiff's discomfort was temporary. Allegations about temporary inconveniences, e.g., being

deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Moreover, the Sixth Circuit has concluded that the denial of toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days while a prisoner was in segregation did not violate the Eighth Amendment. *See Richmond v. Settles,* No. 09-6285, 2011 WL 6005197, at *6 (6th Cir. Dec. 2, 2011); *see also Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (the deprivation of a shower and other personal hygiene items for a "brief span of time . . ., i.e., only six days" is not actionable conduct). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Plaintiff was only denied his personal items for four days, and, thus, he does not state an Eighth Amendment claim.

Plaintiff finally contends that his segregation cell was unsanitary because of feces on the walls. Although the conditions in segregation were unpleasant, Plaintiff has not alleged facts indicating that the conditions were "sufficiently serious" to amount to a constitutional violation. Plaintiff does not allege that prison officials allowed the unsanitary condition to persist by failing to clean the segregation cell or that they refused to provide him with cleaning supplies so that he could clean his own cell. Moreover, the unsanitary conditions were only temporary in Plaintiff's

segregation cell. *See Sterling v. Smith*, No. CV606-103, 2007 WL 781274, at *4 (S.D. Ga. Mar. 8, 2007) (citing *McNatt v. Unit Manager Parker,* No. 3:99CV1397 AHN, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000)) (the Eighth Amendment is generally not violated where unsanitary conditions are temporary); *see also Dellis*, 257 F.3d at 511. As a result, Plaintiff fails to state an Eighth Amendment claim for the feces on the walls of his segregation cell.

In summary, Plaintiff fails to state an Eighth Amendment claim for his placement in segregation, the denial of his personal items and for the feces in his segregation cell.

**B.     Due Process**

Plaintiff argues that he was placed in segregation for four days without a hearing, in violation of his due process rights. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation for one month did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson*, 545 U.S. at 222-23. In *Rimmer-Bey*, 62 F.3d at 790-91, the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and a hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id.*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Further, under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (involving two years of segregation while inmate was investigated for murder of prison guard in riot); *Mackey*, 111 F.3d at 463 (finding no atypical or significant hardship in inmate's placement in segregation for one year after inmate was found guilty of possession of illegal contraband and assault and where

- 8 -

reclassification was delayed due to prison crowding); *Rimmer-Bey*, 62 F.3d at 790-91 (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery).

Here, Plaintiff does not allege that his segregation was either atypical or significant. The only allegations he presents regarding his four-day stay in segregation was that he was denied certain privileges and his segregation cell was covered in fecal matter. The length of Plaintiff's placement in segregation is not determinative. *See Jones*, 155 F.3d at 812. Moreover, the Court has concluded that the conditions of confinement in Plaintiff's segregation cell did not constitute a constitutional violation. Accordingly, Plaintiff fails to state a due process claim.

### C. Access to Courts

Plaintiff complains that Defendants did not allow him to have any legal materials while in segregation. Construing Plaintiff's complaint liberally, this Court finds that Plaintiff intended to bring a First Amendment access-to-the-courts claim in his complaint. *See Haines*, 404 U.S. at 520. It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility

to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has not alleged that he has suffered an actual injury to pending or contemplated litigation. Therefore, he fails to state an access-to-the-courts claim.

### D. Policy

Plaintiff claims that Defendants escorted him to segregation in violation of MDOC policy. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 2/23/2012         /s/ R. Allan Edgar
                         R. Allan Edgar
                         United States District Judge